**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| GARY GENE WATTS, | 3:04-CV-0386-ECR (RAM) |
| Petitioner, | |
| vs. | **Order** |
| CRAIG FARWELL, et al., | |
| Respondents. | |

## I. Introduction and Background

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by Gary Gene Watts, a prisoner at Lovelock Correctional Center.

Petitioner was convicted in Nevada's Third Judicial District Court in 1998 of three counts of sexual assault of a minor under the age of fourteen years, and was sentenced to three consecutive terms of life imprisonment with the possibility of parole after ten years. Petitioner pled guilty to two of the charges and entered an Alford plea as to the third count.

Petitioner filed a pro se appeal, for which Attorney John P. Springgate entered an appearance to represent Petitioner in the prosecution of his appeal. Petitioner sought to challenge his plea canvass, alleging that the sentences were to run concurrently, not consecutively. The Nevada Supreme Court dismissed the appeal on May 10, 2000, because the Court does not allow a defendant to challenge

the validity of a guilty plea on direct appeal. <u>Order Dismissing Appeal</u>, No. 32978 at 1-2 (May 10, 2000) (Ex. 36).

On May 9, 2001, Petitioner filed a post-conviction Petition for Writ of Habeas Corpus, raising five assignments of error:

(1) Petitioner's guilty/Alford plea was not knowingly, voluntarily or intelligently entered because the court failed to discuss or explain to Petitioner the possibility and effect of consecutive sentences during the plea canvass;

(2) Ineffective assistance of trial counsel, Attorney Witek, because counsel failed to have a psychological evaluation performed regarding Petitioner's competency and failed to adequately advise Petitioner regarding the consequences of his plea;

(3) Ineffective assistance of trial counsel, Attorney Witek, because counsel failed to advise Petitioner and Court of a conflict of interest: Witek also represented one of the three female victims on other charges during his representation of Petitioner;

(4) Ineffective assistance of trial counsel, Attorneys Witek, Ward, and Grant, for failure to investigate the case; and

(5) Ineffective assistance of appellate counsel for raising only the sentencing claim, and neglecting the conflict of interest claim, on direct appeal.

On December 21, 2001, Petitioner's attorney filed a Brief in Support of Petition for Writ of Habeas Corpus, providing additional argument concerning (1) the failure to investigate the criminal charges, (2) whether Defendant's plea was not knowing and intelligent due to counsel's failure to investigate, (3) counsel's conflict of interest, and (4) whether based on the totality of the circumstances, Petitioner's guilty plea should be set aside because the plea was not knowingly and voluntarily made. On January 10, 2003, Petitioner's attorney filed a Supplemental Petition for Post-Conviction Relief to discuss trial counsel's purported conflict of interest due to his employment at the Lyon County District

2

Attorney's office at the commencement of Petitioner's criminal charges, to which the State responded.

After an evidentiary hearing, the state district court denied the petition. Petitioner appealed this decision. The Nevada Supreme Court "received/entered" Petitioner's proper person Appellant's Opening Brief on October 16, 2003, which raised the following assignments of error:

> I. The District Court erred by determining that Counsel Witek's representation was effective under Strickland
>
>    A. Witek's failure to investigate was ineffective and Appellant was prejudiced thereby
>
>    B. Counsel's two conflicts of interest was ineffective and Appellant was prejudiced thereby
>
> II. The District Court erred by determining that Appellant's guilty plea was voluntarily and knowingly entered
>
> III. The District Court failed to render findings of fact and conclusions of law as to several claims presented in the proceedings below which merit habeas relief
>
>    A. A Brady violation occurred
>
>    B. Appellate counsel was ineffective
>
>    C. Appellant's question of competency was never addressed

Petitioner was allowed to file a supplemental memorandum addressing counsel's two purported conflicts of interest. The Nevada Supreme Court affirmed the district court.

Petitioner filed his Petition for Writ of Habeas Corpus (#7) in this Court on September 21, 2004. The present petition, Petitioner's First Amended Petition (#17), was filed on May 6, 2005. The First Amended Petition raises the following grounds for relief:

> Ground One: Violation of due process of law under the Fifth and Fourteenth Amendments to the United States Constitution because his guilty plea was not entered knowingly, intelligently, and

voluntarily due to the trial court's failure to advise Petitioner of the possibility of consecutive sentences.

Ground Two: Ineffective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution as a result of counsel's failure to (A) investigate the case, (B) advise Petitioner as to the consequences of his plea, (C) obtain a psychological examination, and (D) advise Petitioner or the Court of the conflicts of interest.

Respondents answered (#27) and moved to dismiss the petition (#28). This Court found that Ground 2(B) — failure to advise Petitioner as to the consequence of his plea — was not exhausted. (Order #37.) Pursuant to this Court's Order (#37), Defendant elected to abandon Ground 2(B). The remaining issues are properly before the Court.

## **II. Federal Habeas Standard**

Title 28 of United States Code § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." Davis v. Kramer, 167 F.3d 494, 500 (9th Cir. 1999).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." Lockyer v. Andrade, 123 S.Ct. 1166, 1173 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000), and citing Bell v. Cone, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Lockyer v. Andrade, 123 S.Ct. at 1174 (quoting Williams, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. Id. (quoting Williams, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this Court looks to the state courts' last reasoned decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991);

5

Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), cert. denied, 122 S.Ct. 324 (2001).

With respect to pure questions of fact, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. Consideration of Exhibit 57

In its Order (#37), this Court reserved judgment on the question of whether Exhibit 57, an affidavit meant to support the amended petition, should be considered in ruling on Petitioner's federal habeas claims. (Order 2:21-22 (#37).) Exhibit 57 is an affidavit from Ed Heddy, an investigator with the Federal Public Defenders Office. Heddy claims to have spoken to two of the victims and that they acknowledge they were "active participants" in the charged sexual acts. (Ex. 57 at 2.) Attached to the affidavit are two statements, purportedly belonging to the two victims, where both victims state they would have testified that Petitioner should have received a lighter sentence. Petitioner suggests that in light of this, he should have been sentenced to a sentence concomitant with statutory seduction, one to ten years, instead of sexual assault, which at the time of the crime carried a life sentence with a possibility of parole after ten years. Petitioner was 42 at the time of the sexual assaults; the victims were 13.

Respondent argues that considering the attachment of new evidence violates 28 U.S.C. § 2254 because the Court would be

6

examining a different record than that which was before the state courts.  Petitioner responds that the affidavit "merely provides evidence that the facts as alleged by Watts were, in fact, true." (Petit.'s Opp. 9 (#32).)  Petitioner seeks to use the evidence to support his claim that trial "counsel was ineffective for failing to investigate, locate and interview the victims." (Id.)

We do not find Petitioner's reasoning persuasive.  Petitioner is attempting to inject the affidavit into the proceedings specifically to continue to develop the factual record.  Section 2254(e)(2) permits this additional information in only limited instances, none of which are present here.  There is no "new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court" that was previously unavailable.  See § 2254(e)(2)(A)(i).  Nor is there "a factual predicate that could not have been previously discovered through the exercise of due diligence."  See § 2254(e)(2)(A)(ii).  Finally, there is nothing underlying the claim that "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense."  See § 2254(e)(2)(B).

Therefore, we will not consider Exhibit 57.

**IV. Ground One: Consecutive and Concurrent Sentences Claim**

Petitioner avers that his conviction and sentence are unconstitutional because his guilty plea was not knowingly, intelligently, and voluntarily given in violation of his Fifth and Fourteenth Amendment rights because the trial court failed to advise

7

him that the sentences could run consecutively.  Specifically, Petitioner argues that the "trial court did not specifically advise him that the sentences could run consecutively or that it was solely within the court's discretion to impose the sentences consecutively or concurrently."  (Petit.'s Reply 5 (#42).)

Respondents argue that "the record reflects that Watts was in fact aware that the sentences could be imposed consecutively." (Resps.' Answer 10 (#40).)

### A. Standard for Withdrawal of Plea Deal

A guilty plea waives important rights and is valid only if done voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970).  The court taking a defendant's plea is "responsible for ensuring a 'record adequate for any review that may be later sought.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Boykin v. Alabama, 395 U.S. 238, 244 (1969)).  The Supreme Court has "never held that the judge must himself explain the elements of each charge to the defendant on the record." Id.  Instead, the "constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." Id.  Nevertheless, a plea of guilty must include the awareness of the "direct consequences" of the plea. Brady, 397 U.S. at 755 (quoting Shelton v. United States, 242 F.2d 101, 115 (5th Cir. 1957) (judgment rev'd on other grounds by Shelton v. United States, 356 U.S. 26 (1958)).
//

8

### B. Analysis

Petitioner contends that the Nevada Supreme Court did not rely on any Supreme Court of the United States precedent in making its decision. Even though this is true, such a failure does not require the writ to issue. In considering this claim, the Nevada Supreme Court found that "the guilty plea agreement, signed by Watts, provided that 'if more than one sentence of imprisonment is imposed the sentencing judge has the discretion to order the sentences served concurrently or consecutively.'" Order of Affirmance, No. 41762 at 2-3 (May 28, 2004). The Court continued, "during the oral plea canvass, Watts acknowledged that he signed and discussed the terms of the plea agreement with his attorney." Id. at 3. The Court noted that the district court did not explicitly advise Petitioner that his sentences could be imposed consecutively during the canvass, but concluded that "the failure to utter talismanic phrases will not invalidate a plea where a totality of circumstances demonstrates that the plea was freely, knowingly, and voluntarily made." Id. (quoting State v. Freese, 13 P.3d 442, 447 (Nev. 2000)).

The trial court below sufficiently ensured an adequate record for review, and this record reveals that Petitioner knew that his sentences could be imposed either consecutively or concurrently. Thus, the constitutional prerequisites for entering into a plea deal were met in accordance with the Supreme Court in Bradshaw. First, as the Nevada Supreme Court found, Petitioner himself signed the guilty plea agreement, which provided for the possibility that the sentencing judge could impose consecutive sentences. Second, as the

9

Nevada Supreme Court found, Petitioner acknowledged that he discussed the terms of the plea agreement with his attorney.  Third, the guilty plea agreement provided that the district attorney could argue for the imposition of consecutive sentences.  <u>Guilty Plea Agreement</u> at 1 (Exhibit 19).  Fourth, Petitioner acknowledged that he understood the consequences of his plea in the guilty plea agreement.  <u>Id.</u> at 2 ("Consequences of the Plea" section).  Fifth, Petitioner did not object when the prosecutor asked for consecutive sentences, (Sentencing Proceedings, July 20, 1998 at 7-14 (Exhibit 23)), nor did Petitioner object when his own attorney asked the court to run one of the three counts concurrently rather than consecutively, thereby arguing for a twenty-year term instead of a thirty-year term. (<u>Id.</u> at 10.)  Sixth, Petitioner did not object or make any indication that he did not understand what was happening when the court imposed consecutive sentences.  (<u>Id.</u> at 12-14.)

We cannot say that the Nevada Supreme Court's conclusion, in light of the precedent of the Supreme Court of the United States, was objectively unreasonable.

### **V. Ground Two: Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel in three ways: (1) counsel failed to investigate the case; (2) counsel failed to seek a competency evaluation; and (3) counsel had two conflicts of interest.

### **A. Standard for Ineffective Assistance of Counsel**

In <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970), the Supreme Court declared that "the right to counsel is the right to

the effective assistance of counsel." In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Court established the standards by which claims of ineffective counsel are to be measured. In <u>Strickland</u>, the Court propounded a two prong test; a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 688, 694.

    Regarding the first prong — commonly known as the "effectiveness prong" — the <u>Strickland</u> Court expressly declined to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. <u>Id.</u> Defense counsel's duties are not to be defined so exhaustively as to give rise to a "checklist for judicial evaluation ... [because] [a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." <u>Id.</u>

    The <u>Strickland</u> Court instructed that review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting effects of hindsight." <u>Id.</u> at 689. A reviewing court must "indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy." Id. (citation omitted).

Construing the Sixth Amendment to guarantee not effective counsel per se, but rather a fair proceeding with a reliable outcome, the Strickland Court concluded that demonstrating that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. In order to satisfy Strickland's second prong, the defendant must show that the attorney's sub-par performance prejudiced the defense. Id. at 691-92. The test is whether there is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 691-94. The Court defined reasonable probability as "a probability sufficient to undermine confidence in the outcome." Id. at 694.

### B. Ground Two A: Failure to Investigate the Case

Petitioner contends that trial counsel failed to conduct any interviews or perform any investigation of the underlying case. Petitioner argues that his decision to plead guilty was predicated on a Sixth Amendment violation — to wit, that trial counsel "abdicated his Sixth Amendment responsibility to zealously represent his client." (Petit.'s Reply 7 (#42).) Petitioner contends that had trial counsel investigated the case, counsel would have been able to develop the fact that the sexual acts were consensual. Petitioner asserts that the prosecution could then only have proven

12

statutory sexual seduction, the penalties for which are significantly lower than those for sexual assault.

The Nevada Supreme Court rejected Petitioner's claims. The Court wrote:[1]

> To state a claim of ineffective assistance of trial counsel sufficient to invalidate a judgment of conviction, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. See Strickland v. Washington, 466 U.S. 668, (1984); Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984). A petitioner must further establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Kirksey v. State, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996). The court can dispose of a claim if the petitioner makes an insufficient showing on either prong. Strickland, 466 U.S. at 697. The district court's factual findings regarding a claim of ineffective assistance of counsel are entitled to deference when reviewed on appeal. Riley v. State, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994).
> . . .
> Third, Watts alleged that his trial counsel was ineffective for failing to investigate the victims. Watts claimed that with a proper investigation, he would not have pleaded guilty. Watts contended that a thorough investigation would have produced impeachment evidence, allowed counsel to attack the credibility of the victims, revealed the victim's motive to fabricate, and uncovered whether the victims were competent to stand trial. Watts did not support this claim with specific facts, however, and his claim is nothing more than speculation concerning evidence that may have been uncovered by additional investigation. See Hargrove v. State, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984). Thus, Watts did not demonstrate that his trial counsel was ineffective on this issue, and we affirm the order of the district court with respect to this claim. Fourth, Watts claimed that his trial counsel was ineffective for failing to adequately investigate and inform Watts of the defense of consent. Watts contended that he would not have pleaded guilty to three counts of sexual assault on a minor under the age of fourteen if he was aware that consent was a defense. Watts further claimed that his counsel was ineffective in allowing him

---

[1] The Nevada Supreme Court places citations in footnotes. For ease of formatting, the citations are embedded in the textual sentences throughout this Order.

> to plead guilty to sexual assault rather than statutory sexual seduction.
>
> Witek testified at the evidentiary hearing that he did not believe consent was a viable defense based on the facts of Watts' case. Witek further testified that the State was unwilling to accept a plea to statutory sexual seduction rather than sexual assault. The record on appeal reveals that forty-two-year-old Watts allowed two runaway thirteen year-old girls to stay at his home. Additionally, a thirteen year-old neighbor frequently spent the night at Watts' residence. Watts provided the girls with marijuana and methamphetamine. He also showed them a pornographic video. When the girls were under the influence of drugs, Watts engaged in sexual activity with them. We conclude that Watts failed to establish that his trial counsel acted unreasonably on this issue. Watts did not demonstrate that the victims were mentally and physically capable of consenting to sexual activity with him, such that his trial counsel was ineffective in allowing him to plead guilty to sexual assault. See NRS 200.366 (providing that a person is guilty of sexual assault if he "subjects another person to sexual penetration . . . against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct"). Consequently, the district court did not err in denying the claim.

Order of Affirmance, No. 41762 at 3-7 (May 28, 2004).

We find that the Nevada Supreme Court's decision was a reasonable application of clearly established United States Supreme Court precedent. The Nevada Supreme Court identified the correct governing legal principles from the Supreme Court of the United States and reasonably applied those principles to the facts at hand.

**C. Ground Two B: Failure to Advise Petitioner as to the Consequences of His Plea**

Petitioner has voluntarily abandoned this claim. (Petit.'s Formal Decl. of Abandonment (#38).)

**D. Ground Two C: Failure To Obtain a Psychological Examination**

While awaiting extradition from Guam, Petitioner attempted suicide. He avers that his suicidal ideation remained through

14

entering his plea agreement. (Petit.'s Reply 7 (#42).) Trial counsel advised Petitioner that he could undergo a psychological evaluation; however, none was ever taken. (Id.) Petitioner now contends that trial counsel was ineffective because by not insisting on an evaluation, counsel could not be sure that Petitioner was entering a knowing, voluntary, and intelligent plea. (Id.)

### 1. Supreme Court of the United States Standard

To stand trial, the Supreme Court requires a defendant to have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and [have] a rational as well as factual understanding of the proceedings against him." Drope v. Missouri, 420 U.S. 162, 172 (1975) (internal quotation omitted). In Godinez v. Moran, 509 U.S. 389 (1993), the Court determined that the standard for competence when pleading guilty was the same as the standard for standing trial. Id. at 398. In Drope, the Supreme Court looked to state law to determine the standard for when a person was competent to stand trial. See Drope, 420 U.S. at 173-74.

### 2. Nevada Supreme Court's Findings

In Petitioner's case, the Nevada Supreme Court found the following:

> A defendant is competent to stand trial if he has adequate "present ability to consult with his lawyer with a reasonable degree of rational understanding" and if "he has a rational as well as a factual understanding of the proceedings against him." Melchor-Gloria v. State, 99 Nev. 174, 179-80, 660 P.2d 109, 113 (1983). A hearing is constitutionally and statutorily required if reasonable doubt exists as to the defendant's competency. See id. at 180, 660 P.2d at 113; NRS 178.400-440. In the instant case, Watts did not allege specific facts to support a conclusion he was unable to consult with his attorney, or

15

> understand the proceedings against him.  Rather, Watts claimed that he was despondent when faced with extradition to stand trial on multiple sexual assault charges. Further, Witek testified at the evidentiary hearing that he met with Watts three or four times prior to the entry of his guilty plea, and Witek felt that Watts "was not even approaching incompetency."  Finally, Watts testified that he never informed Witek of his suicide attempt in Guam.  Consequently, we conclude that Watts did not demonstrate that his counsel acted unreasonably in failing to have his competency evaluated, and the district court did not err in denying the claim.

Order of Affirmance, No. 41762 at 4-5 (May 28, 2004).

### 3. Analysis

Here, Petitioner claims that trial counsel was ineffective because he did not order Petitioner to undergo a psychological evaluation to ensure that he was competent to enter into a plea deal.  Thus, Petitioner must show that trial counsel was (1) objectively unreasonable and (2) prejudicial to Petitioner in regard to whether Petitioner was sufficiently able to consult with trial counsel.

No Supreme Court case requires an attorney to request a psychological evaluation of a client who has attempted suicide. Moreover, as the Nevada Supreme Court found, Petitioner never informed counsel that he had attempted suicide, nor is there any evidence that suggests that counsel should have known of any suicidal ideation.  For Petitioner's claim to succeed, not only would trial counsel have had to be aware of the suicide attempt and somehow forced Petitioner to undergo the evaluation, but Petitioner would have had to have been found incompetent, otherwise there would be no prejudice.

16

We find that the Nevada Supreme Court reasonably applied the correct legal standard to the facts in this case.

### E. Ground Two D: Failure to Advise Petitioner or the Court of the Conflicts of Interest

Petitioner asserts that trial counsel had two conflicts of interest: (1) a conflict due to his representation of one of the victims during the pendency of Petitioner's criminal action; and (2) a conflict due to his employment at the Lyons County District Attorneys office at the initiation of criminal charges against Petitioner.

#### 1. Supreme Court of the United States Standard for Conflicts of Interest

In Mickens v. Taylor, 535 U.S. 162 (2002), the Supreme Court of the United States concluded that it is a violation of a defendant's Sixth Amendment right to effective assistance of counsel to actively represent conflicting interests. Id. at 166. For example, the Court in Holloway v. Arkansas, 435 U.S. 475 (1978), found such active representation of conflicting interests occurred when a trial court, over objection, required defense counsel to represent simultaneously three co-defendants. Id. at 478-80. The trial court would not allow counsel to cross-examine any of the defendants on the behalf of the other two. Id. On appeal, the Supreme Court acknowledged that a defense attorney is in the best position "to determine when a conflict of interest exists or will probably develop in the course of a trial." Id. at 485 (internal quotation omitted).

The Supreme Court clarified this position in Cuyler v. Sullivan, 446 U.S. 335 (1980), where the court held that a defendant

17

must demonstrate that a "conflict of interest actually affected the adequacy of his representation." Id. at 348-49. Sullivan also recognized that a trial court may have a duty to inquire into a conflict of interest. Id. at 346-47.

Returning to Mickens, the Supreme Court held that unless counsel protests his "inability simultaneously to represent multiple defendants" or the court is required to inquire into a conflict, a petitioner must establish "that the conflict of interest adversely affected his counsel's performance." Mickens, 535 U.S. at 173-74. Thus, the standard to apply is that from Sullivan.

### 2. Petitioner's Actual Conflict Claim

With respect to Petitioner's claim that counsel was ineffective because counsel previously represented one of the victims, the Nevada Supreme Court found the following:

> Witek testified that he was asked to represent C.H., one of Watts' victims, in an unrelated juvenile hearing approximately two weeks before he was assigned to represent Watts. Witek stated that he met with C.H. for no more than ten or twelve minutes and appeared briefly with her in juvenile court. Witek further testified that he made no connection between his representation of C.H. and Watts' case until the instant petition was filed. We conclude that Watts failed to establish that an actual conflict of interest existed due to his trial counsel's prior representation of C.H., such that Watts was denied the effective assistance of counsel. Therefore, the district court did not err in denying the claim.

Order of Affirmance, No. 41762 at 8-9 (May 28, 2004).

The Nevada Supreme Court examined the proper standard and reasonably applied the facts. Counsel was unaware of any potential conflict of interest, and Petitioner has not shown that any conflict actually affected the adequacy of the representation. We also note that in his failure to investigate claim above, Petitioner assigned

18

error to trial counsel for not meeting with C.H.; Petitioner cannot now attempt to argue that by meeting a victim trial counsel's representation was "influenced" and caused him to "advise Watts to enter a plea."

### 3. Petitioner's Conflict of Interest — Former Employer Claim

Petitioner claims that attorney Witek had a conflict of interest in representing Petitioner because Witek previously worked for the Lyons County District Attorney's office.  Petitioner avers that Witek did not tell him of Witek's previous employment, and that if Petitioner had known of it, Petitioner would not have allowed Witek to remain as his counsel.

With respect to this claim, the Nevada Supreme Court concluded as follows:

> "The Sixth Amendment guarantees a criminal defendant the right to conflict-free representation." Coleman v. State, 109 Nev. 1, 3, 846 P.2d 276, 277 (1993); see also Clark v. State, 108 Nev. 324, 831 P.2d 1374 (1992).  In order to establish a violation of this right, a defendant must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980); see also Clark, 108 Nev. 324, 831 P.2d 1374.  The existence of an actual conflict of interest must be established on the specific facts of each case, but "[i]n general, a conflict exists when an attorney is placed in a situation conducive to divided loyalties." Clark, 108 Nev. at 326, 831 P.2d at 1376 (quoting Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991)).
> In the instant case, Witek testified he was not involved in Watts' case while he worked at the district attorney's office.  Witek further stated that his familiarity with Watts' case consisted of nothing more than a general knowledge that an individual charged with sex offenses had fled the jurisdiction.  Witek did not recognize Watts as this individual, however, when Watts was extradited to Nevada more than two years later and Witek was assigned to represent him.  Based on the above testimony, the district court's determination that Witek did not actively represent conflicting interests is

19

>supported by substantial evidence. See <u>Riley</u>, 110 Nev. at 647, 878 P.2d at 278. Consequently, we affirm the order of the district court with respect to this claim.

<u>Order of Affirmance</u>, No. 41762 at 7-8 (May 28, 2004).

The Nevada Supreme Court reasonably applied the facts at hand to the appropriate legal standard, as set forth by the Supreme Court of the United States.

## VI. Conclusion

**IT IS THEREFORE HEREBY ORDERED THAT** Petitioner's request for the Court to include Exhibit 57 in the record is **DENIED**.

**IT IS FURTHER ORDERED THAT** the first amended petition for writ of habeas corpus (#17) is **DENIED**.

The clerk shall enter judgment accordingly.

DATED: March  27  , 2008.

_____
UNITED STATES DISTRICT JUDGE

20